Judgment rendered July 15, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,931-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| REGIONS BANK, AS TRUSTEE OF THE ANTRIM TRUST | Plaintiff-Appellee |
| versus | |
| BROOKIE HUDSON WALKER, CHARLES EWING, III AND CHARLOTTE HUDSON EWING | Defendants-Appellants |

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 171,045

Honorable Allen Parker Self, Jr., Judge

* * * * *

| | |
|---|---|
| BROOKIE HUDSON WALKER | In Proper Person, Appellant |
| CHARLES EWING, III | In Proper Person, Appellant |
| CHARLOTTE HUDSON EWING | In Proper Person, Appellant |
| KEAN MILLER, LLP By: J. Mark Miller | Counsel for Appellee |

* * * * *

Before COX, STEPHENS, and ELLENDER, JJ.

**ELLENDER, J.,**

The defendants, three self-represented siblings, appeal the trial court's judgment granting Regions Bank, as the trustee of the Antrim Trust, a right of passage across their family property. They ask this court to reverse, arguing the selected location is not the shortest, least injurious route available. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Regions Bank ("Regions") manages several pieces of property belonging to the trust, including a 540-acre tract of land ("the Antrim 540") located in Bossier Parish, immediately north of a tract of land owned by the defendants ("the Walker-Ewing tract"). Louisiana Highway 160 ("Hwy. 160") is immediately south of the Walker-Ewing tract. Since at least the 1960s, timber has been harvested from the Antrim 540 and transported to Hwy. 160 via a verbally granted right of passage through the western side of the Walker-Ewing tract (later referred to as the "Western Route"). The same passage has also been used by recreational hunting lessees to access the Antrim 540.

In December 2022, after receiving information contractors hired by Regions were using an alternate route across their property because the Western Route was impassable, the defendants changed the locks on the gate at the entrance of the Walker-Ewing tract from Hwy. 160, effectively cutting off any access to or from the Antrim 540 via Hwy. 160. Because all prior permission to use the Western Route was verbally given, Regions filed suit against the defendants seeking a formal, recorded right of passage across the Walker-Ewing tract which would provide access to Hwy. 160, allow timber

from the Antrim 540 to be properly harvested, and allow for the recreational hunting lessees to access the Antrim 540.

In its original petition, Regions claimed the Antrim 540 was an involuntarily enclosed estate, and therefore entitled access to the nearest public road; they suggested Hwy. 160 was the nearest public road. Regions asked the trial court to grant it a right of passage through the eastern half of the Walker-Ewing tract (later referred to as the "Eastern Route"). Though it had never been used to harvest timber from the Antrim 540 before, Regions claimed the Eastern Route followed an existing dirt path that passed solely through the Walker-Ewing tract and allowed access to Hwy. 160.

The defendants acknowledged their father had given Regions verbal permission to use the Western Route to transport timber from the Antrim 540. However, they argued that route was now impassable due to Regions' failure to maintain it and, therefore, Regions lost its right to use the previously granted servitude along the Western Route. Regions' subsequent use of the Eastern Route without permission was, they claimed, a poorly disguised attempt to relocate the verbal right of passage previously granted by their father. The defendants argued there was no reason for Regions to traverse the Walker-Ewing tract to get to a public road because Regions Bank had access to a public road from a separate 40-acre tract owned by the Antrim Trust (the "Antrim 40") and situated north of the Antrim 540. They claimed the shortest and least injurious route to access the Antrim 540 was via what became known as the Northern Route, which began at the Antrim 540, crossed a tract of land to the north owned by Ardis & Co. of Louisiana, proceeded west across the Antrim 40, to the Coile Road, which the defendants argued was in fact the closest public road.

The defendants attached several exhibits to their answer, including a map they designated as being updated by the U.S. Department of Transportation in 2012, and upon which they noted the Coile Road as a public road meeting the boundary of the Antrim 40; a map they designated as being created by the Bossier Parish Tax Assessor, which shows the Coile Road meeting the Antrim 40, and which describes the Western Route as an existing dirt road; a map they designated as being a U.S. Geological Survey map created in 1924, which depicts the Western Route as an existing dirt road; another map they designated as being a U.S. Geological Survey map created in 1956 which shows the Coile Road meeting the Antrim 40, and which describes the Western Route as an existing dirt road; a FEMA map showing the Western Route as an existing dirt road; another map they contend was created by the Bossier Parish Tax Assessor depicting the Western Route as an existing dirt road; a Google satellite map depicting the Western Route as an existing dirt road; what appears to be a survey map contesting the location of the Western Route offered by Regions; a police report made to the Bossier Parish Sheriff on November 29, 2022; a handwritten note from Sean McKay with Regions dated December 1, 2022; and several photographs of the Western Route the defendants labeled as being of the "existing dirt road."

Regions then filed an amended petition. They re-urged their original request for a right of passage across the Eastern Route, but also offered the Western Route as an alternative. The Western Route was the logging road historically used to harvest timber from the Antrim 540; it traversed the Walker-Ewing tract, property owned by the U.S. Army Corps of Engineers, and again the Walker-Ewing tract, before meeting Hwy. 160. Regions

expressed a preference for a right of passage along the Eastern Route, but agreed either route would be sufficient to allow for the harvest of timber from that property, as well as to allow hunting lessees to access the Antrim 540.

The defendants answered the amended petition, arguing again the Antrim 540 was not an enclosed estate due to its use of the Coile Road to access the Antrim 40. They contested Regions' description of the Eastern Route as an already existing dirt road; any path that might be present along the Eastern Route was the result of Regions' repeated trespassing and not the result of the defendants' attempt to build a road of any sort. The defendants argued the so-called route was just a space between rows of planted trees and through the yard of their ancestral home place. The only road on the Walker-Ewing tract would be the Western Route, which Regions failed to maintain. The defendants acknowledged the Western Route's historic use to harvest timber from the Antrim 540, which they stated had been the case for over 100 years, with the most recent use occurring in December 2022; they were also aware of the recreational hunting lessees who used the Western Route.

## TRIAL

The matter proceeded to trial. Regions called several witnesses, the first of whom was Charles Coyle, III, a professional land surveyor, who inspected the Eastern, Western, and Northern Routes. Photographs of the various routes were introduced into evidence, along with several maps showing the location of the Antrim 540, the Walker-Ewing tract, Hwy. 160, the proposed routes for the right of passage, and the Antrim 40. Survey maps created by Coyle of the Eastern and Western Routes were also entered

4

into evidence. While both routes depicted were approximately the same length, the Western Route traversed only about 727 feet of the Walker-Ewing tract (the remaining 645 feet or so of the route crossed property owned by the U.S. Army Corps of Engineers), while the Eastern Route traversed approximately 1,462 feet of the Walker-Ewing tract.

Coyle concluded the Western and Eastern Routes would be suitable to allow Regions to harvest timber from the Antrim 540. The Northern Route, however, was problematic because it did not actually access a public road. Coyle's inspection of the Northern Route began at the Emma Cemetery Road, and proceeded down the Coile Road toward the Antrim 40. On the Coile Road, a little over a mile from the Emma Cemetery Road, Coyle found a gate and a "Parish Maintenance Ends Here" sign. Beyond the gate, which he stated blocked the use of the Coile Road, was a dirt path which eventually met the boundary of the Antrim 40. In Coyle's opinion, the portion of the Coile Road situated behind the gate was not maintained by the parish and not a public road. Coyle estimated the distance between the gate and the Antrim 40 to be approximately 4,400 feet. Because the Antrim 40 and the Antrim 540 were not adjacent tracts of land, Regions would need to obtain a servitude from a landowner adjacent to both the Antrim 40 and the Antrim 540, as well as a servitude from Weyerhaeuser Forest Holdings to traverse the land between the Antrim 40 to the gate on the Coile Road.

Sean McKay, Senior Forester and Vice President of Regions, testified he obtained permission to use the Western Route decades prior from the defendants' father, Billy Hudson. McKay stated his records indicated timber had been harvested from the Antrim 540 using the Western Route since the 1960s, though he agreed with the defendants the route had probably been

5

used for at least 100 years. McKay testified the Antrim 540 was used for timber production and also leased to a hunting club for wildlife management purposes. McKay stated the hunters accessed the land seasonally, and his contractors needed access to the Antrim 540 a few times each year, noting the Western Route was not passable during the winter months due to its low-lying nature.

When asked what led to Regions filing for a formal, recorded right of passage, McKay testified that in late 2022, some site work was being done on the Antrim 540. McKay was notified by Joseph Walker, the defendant Brookie Walker's husband, that contractors working for Regions were using the Eastern Route without permission and had damaged the property. McKay went to meet with Joseph Walker at the Walker-Ewing tract, where for the first time, McKay noticed the path referred to as the Eastern Route; he also noticed a tree had fallen across the Western Route, making it impassable. McKay supposed his contractors were using the Eastern Route because of the fallen tree. Walker asked McKay about Regions paying the defendants for past and future use of the Western Route, and McKay told him there would be no payments for past use, while future use would need to be negotiated.

While McKay hoped his meeting with Walker would allow Regions, its contractors, and its hunting lessees to continue using the Western Route to access the Antrim 540, it did not. In addition to changing the locks on the gate at the entry of the Walker-Ewing tract off Hwy. 160, the defendants blocked access to both routes at the northern boundary of the Walker-Ewing tract, placing T-bars into the ground. As a result, Regions, its contractors, and its hunting lessees were left unable to access the Antrim 540. McKay

testified he would have cleared the tree from the Western Route if Regions had access to the Walker-Ewing tract, but because he had been unable to access the Antrim 540 since December 2022, nothing had been done to make the Western Route passable or to repair whatever damage his contractors may have done to the Eastern Route. McKay acknowledged very minimal site work would be required to make the Western Route passable again for purposes of harvesting timber.

Mary Melissa Brantley testified via trial deposition as an expert in real estate abstract work. She established the chain of title to the Antrim 540, and she confirmed that, according to the conveyance records of Bossier Parish, the owners of the Antrim 540 had at no point voluntarily landlocked themselves. Brantley's testimony was entered into evidence without objection; despite being given an opportunity to question Brantley at the deposition, the defendants asked her no questions.

Joseph Walker then testified on behalf of the defendants. He said he was familiar with the Antrim 540, and he acknowledged timber had been harvested from the Antrim 540 via the Western Route for probably 100 years. He believed the Coile Road was the closest public road to property owned by the Antrim Trust based on a map of Bossier Parish Police Jury District 12, which he stated depicted the entirety of the Coile Road as a public road, including the portion not maintained by the parish. On cross-examination, it was revealed Walker himself wrote the words "public road" on the maps it attached to its answer as proof of the Coile Road's public designation; the words "public road" were not printed by the authors of any of the maps depicting the Coile Road.

7

Though several exhibits, including maps and photographs, were referred to by the defendants when they questioned the witnesses, none of those items appear to have been entered into evidence. However, a review of the record indicates most of the maps and photographs referred to by the defendants were entered into evidence by Regions during the presentation of its case.

Ultimately, the trial court granted Regions a servitude across the Western Route. In its written opinion dated July 10, 2025, the court found the Antrim 540 to be an enclosed estate. It determined the enclosure of the property was not voluntary, and Regions was entitled to a right of passage from the Antrim 540 to the nearest public roadway. The trial court found Hwy. 160 was the nearest public road. It found the Coile Road was public where it was maintained by the parish, and that the parish maintenance terminated at the gate; the dirt path behind the gate, which was not maintained by the parish and was inaccessible to the public, was not a public road. As the dirt path beyond the gate was not a public road, the trial court found there was no actual access from the Antrim 40 to a public road. The court further determined the appropriate right of passage for the Antrim 540 would involve traversing the Walker-Ewing tract, and it found the shortest and least injurious servitude was the Western Route, which had historically been used by Regions with permission from the prior landowner. Regions was ordered to prepare a judgment in accordance with the trial court's opinion.

Prior to the filing of the signed judgment, the defendants prematurely filed a notice of appeal and a motion to reconsider. The signed judgment was filed shortly thereafter, and granted Regions, as trustee of the Antrim

Trust, a servitude along the Western Route, between the Antrim 540 and Hwy. 160, for the purpose of harvesting timber. The judgment also allowed hunting lessees who used the Antrim 540 to utilize the Western Route to access their leases. The defendants then filed a motion for new trial, which the trial court denied, and another request for a devolutive appeal, which the trial court granted.

**ARGUMENTS OF THE PARTIES**

In their first assignment of error, the defendants argue the trial court erred in allowing Regions to dictate the location of the right of passage and failed to consider other neighboring tracts of land as possible estates that could be burdened by the right of passage sought by Regions.

In their second assignment of error, the defendants argue the court failed to impose the access servitude on the estate providing the shortest and most practical route to a public road, in accordance with La. C.C. art. 692; the Northern Route provides the shortest and least injurious route for access to a public road.

In their third assignment of error, the defendants contend the trial court erred in finding the portion of the Coile Road from the gate to the boundary of the Antrim 40 was not a public road because no evidence was submitted to support such a finding.

In their fourth assignment of error, the defendants argue the trial court erred in determining the Coile Road was unsuitable for traffic reasonably necessary for the use of the Antrim 540. They argue the portion of the Coile Road beyond the "Parish Maintenance Ends Here" sign is a well-maintained, wide dirt road, free of ruts and standing water. The defendants also argue

Regions Bank admitted to using the Coile Road to access the Antrim 40 in the past, making it suitable to harvest timber from the Antrim 540.

In their fifth assignment of error, the defendants contend the trial court erred in granting a right of passage on a route that was "impassable due to its low-lying nature" during the winter months. They argued the most appropriate route would allow for year-round access.

In their sixth assignment of error, the defendants argue the trial court erred in admitting the chain of title and related testimony given by Mary Melissa Brantley concerning whether the Antrim 540 was voluntarily landlocked. The defendants contend Brantley's review of the Antrim 540 only included a 140-acre portion of the 546-acre tract, and they argue the trial court should not have considered Brantley's testimony because it was based on this incomplete review of the property records.

In their seventh assignment of error, because Regions asserted the Antrim Trust's ownership of only 140 acres in its original petition, the defendants argue the trial court erred when it rendered a judgment referencing approximately 546 acres owned by the Antrim Trust.

In their eighth assignment of error, the defendants argue the trial court erred in allowing "recreational hunting leases" to be included in the judgment because the trial court's written opinion did not contain any such language.

The defendants ask this court to reverse the trial court's judgment granting Regions, as trustee for the Antrim Trust, a legal right of passage across the Walker-Ewing property via the Western Route.

Regions contends, after considering the Eastern, Western, and Northern Routes, the trial court properly selected the Western Route as the

10

shortest and least injurious location for its right of passage. It asks this court to affirm the trial court's judgment granting Regions, as trustee of the Antrim Trust, a right of passage along the Western Route.

**DISCUSSION**

*Assignment of Error No. 1*

It is well-settled that the owner of an involuntarily enclosed estate with no access to a public road may claim a right of passage over neighboring property to the nearest public road. La. C.C. art. 689(A). The owner of the enclosed estate may not demand the location of the passage anywhere he chooses; rather, the passage from the enclosed estate to the public road generally shall be taken along the shortest route that is the least injurious to the intervening lands. La. C.C. art. 692. With that said, the circumstances of each case determine the location of the servitude. *Blackjack Farms, L.L.C. v. Richmond*, 53,986 (La. App. 2 Cir. 6/30/21), 324 So. 3d 726, *writ denied*, 21-01119 (La. 11/10/21), 326 So. 3d 1246, citing *Phillips Energy Partners, LLC v. Milton Crow Ltd. P'ship*, 49,791 (La. App. 2 Cir. 5/20/15), 166 So. 3d 428, *writ denied*, 15-1396 (La. 10/2/15), 186 So. 3d 1148. While courts typically grant a right of passage least injurious to the servient estate, the location is not left up to the option of the party who must grant the servitude; other factors, such as distance, degree of injury to the servient estate, practicability, and cost all weigh in the decision of where to locate the right of passage. *Id*.

The trial court was presented with two possible routes for the servitude by Regions, and the defendants proposed a third route for the court's consideration. After hearing testimony and evidence concerning all three routes, the trial court chose the Western Route. McKay's testimony

11

established the work and cost involved to repair the currently impassable Western Route would be minimal. Further, the Western Route was clearly suitable for the needs of Regions and the hunters who leased the Antrim 540; McKay testified he obtained verbal permission to use the Western Route several decades prior from Billy Hudson, and Walker himself admitted the Western Route had probably been in use for at least 100 years to harvest timber from the Antrim 540. In addition to being a well-established route, the Western Route also traversed the smallest amount of the Walker-Ewing tract. Based on the record, we cannot say the trial court erred in finding the Western Route to be the most appropriate location for the right of passage requested by Regions.

*Assignments of Error Nos. 2, 3, and 4*

The defendants argue the trial court erred in finding the Coile Road was not a public road, and in determining the Coile Road unsuitable for the kind of traffic reasonably necessary for the use of the Antrim 540. They also argue the trial court erred in granting the servitude along the Western Route because a shorter, less injurious route with access to a public road, the Northern Route, was available. Because these assignments center around the defendants' clear disagreement with the trial court's finding the Coile Road was not a public road beyond the locked gate and the "Parish Maintenance Ends Here" signage, we will consider them together.

A road may be either public or private. A public road is one that is subject to public use. The public may own the land on which the road is built or merely have the right to use it. A private road is one that is not subject to public use. La. C.C. art. 457. A public highway, street, or road is any place that is (1) open to vehicular traffic by members of the general

12

public, even if the public is unlikely to use the road except to go to a particular place, and (2) maintained by the public. *Phipps v. Schupp*, 09-2037 (La. 7/6/10), 45 So. 3d 593; *Bardfield v. New Orleans Pub. Belt R. R.*, 371 So. 2d 783 (La. 1979); *Kavanagh v. Bowers*, 02-248 (La. App. 5 Cir. 6/26/02), 826 So. 2d 1165, *writ denied*, 02-2086 (La. 11/1/02), 828 So. 2d 575.

The Coile Road is very clearly a public road up to the gate and "Parish Maintenance Ends Here" sign. However, in considering whether the land beyond the gate, which prevents the general public from accessing the dirt path beyond it, is public, we find no evidence offered by the defendants sufficient to rebut that offered by Regions to show the portion of the Coile Road beyond the gate is private property and not a public road. The presence of a locked gate prevents the public from accessing that portion of the Coile Road beyond it. Further, the parish very clearly does not maintain the Coile Road beyond the sign it placed marking the end of its maintenance. Pursuant to La. C.C. art. 457, and considering the holding in *Phipps*, we cannot find the trial court erred in finding the Coile Road was a public road only between the Emma Cemetery Road and the gate.

We now turn to whether the trial court erred in ignoring a shorter, less injurious route. The defendants' assertion the Northern Route is the shortest and least injurious ignores the obvious: the Northern Route is only the shortest and least injurious route *to the defendants*. However, if the Northern Route were selected by the court, Ardis & Co. would have to grant a right of passage between the Antrim 540 and the Antrim 40, which would require the costly construction of an entirely new road across its property. Further, Weyerhaeuser Forest Holdings would have to give Regions a

servitude to access the Coile Road from the Antrim 40, which would also require substantial construction. The Eastern Route presents a similar challenge as it has not been used previously to facilitate the harvest of timber. The Western Route, however, crosses the shortest amount of any private landowner's property, and it burdens only 762 feet of the Walker-Ewing tract. Further, because the Western Route follows an established and apparent servitude which has allowed for the harvest of timber from the Antrim 540 for at least 100 years, minimal site work would be required to make it passable once again. We find no support in the record for the defendants' claim the trial court failed to select the shortest, least injurious route.

*Assignment of Error No. 5*

While the defendants contend the Western Route cannot be the proper choice for a right of passage due to its seasonally restricted use, the law requires a right of passage for the benefit of an enclosed estate be suitable only for the kind of traffic reasonably necessary for the use of that estate. La. C.C. art. 690. The Western Route has been used for harvesting timber from the Antrim 540 for several decades. Furthermore, hunters leasing the Antrim 540 used the Western Route seasonally to access their hunting leases for years prior. As there is no indication Regions required year-round, all-weather access to the Antrim 540, which would be far beyond the access previously needed and used, we see no error in the trial court deeming the Western Route suitable for the kind of traffic necessary for the use of the Antrim 540.

*Assignment of Error No. 6*

While the defendants contend the trial court erred in admitting as evidence a chain of title and testimony of Mary Melissa Brantley that failed to encompass the entire Antrim 540 property, a review of the record reveals Brantley's trial deposition was admitted into evidence without objection. In order to preserve an issue for appeal, a party must make a timely objection and state the specific ground for the objection. La. C.E. art. 103(A)(1); La. C.C.P. art. 1635; *Martin v. Martin*, 44,020 (La. App. 2 Cir. 12/3/08), 3 So. 3d 512. In addition to making a contemporaneous objection, the reasons for the objection must be brought to the trial court's attention, allowing the trial court to make the proper ruling and prevent or cure any error. *Id*. Failure to contemporaneously object constitutes a waiver of the right to complain on appeal. *Id*. When the defendants failed to object to the admission of Brantley's trial deposition into evidence, they waived their right to ask this court to consider any issues they may have had with the trial court's consideration of that testimony. However, even if the defendants had properly objected to her testimony, Brantley's qualification as an expert in real estate abstract work appears appropriate based on her professional experience.

*Assignment of Error No. 7 and 8*

The defendants argue the legal description of the enclosed estate in the final judgment is erroneous because it is inconsistent with that contained in Regions' original petition. In their final assignment, they contend the trial court erred in including the words "recreational hunting leases" in the judgment, despite not addressing those in its written opinion.

Regions petitioned the court for a right of passage from the Antrim 540 to Hwy. 160. While the original petition discussed only the acreage affected by the proposed right of passage, throughout these proceedings, all parties acknowledged the Antrim 540 was a tract of land measuring approximately 540 acres, more or less, situated north of the Walker-Ewing tract. There is no error in the trial court's inclusion of an accurate legal description of the Antrim 540 in its final judgment.

The defendants contend the trial court should not have included recreational hunting lessees as persons authorized to use the right of passage granted to Regions because there was no discussion of the recreational hunting lessees in the court's written opinion. While the written opinion did not discuss the recreational hunting lessees specifically, whether the hunting lessees were specifically discussed in the written opinion giving reasons for judgment is immaterial. It is well-settled that the trial court's oral or written reasons for judgment form no part of the judgment; appellate courts review judgments, not reasons for judgment. *Woodard v. Brookshire Grocery Co.*, 54,574 (La. App. 2 Cir. 8/10/22), 345 So. 3d 439, *writ denied*, 22-01360 (La. 11/16/22), 349 So. 3d 1001.

In this case, Regions asked for a right of passage for itself, its contractors, and its recreational hunting lessees. After hearing evidence and argument from both parties, the trial court granted the relief requested by Regions. The defendants presented no evidence at trial to rebut McKay's testimony offered in support of Regions' request for a right of passage, which he stated was to facilitate the harvest of timber and wildlife management on the Antrim 540. As such, we can find no error in the trial court's judgment granting recreational hunting lessees the use of the right of

16

passage along the Western Route to obtain access to the Antrim 540 from Hwy. 160.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment granting Regions Bank, as the trustee of the Antrim Trust, a right of passage through the Walker-Ewing tract along the Western Route. All costs are to be paid by the defendants.

**AFFIRMED.**